Council, before you start, as you both and Natalie know, we have a case called United States v. Zavala that says quite a few things about sentencing post-guidelines and what effect you give, not post-guidelines, post-booking, and what effect we are supposed to give the guidelines in determining the propriety of a post-booking sentence. Zavala probably said more about that than any of our other decisions, and Zavala is not yet final. So the likelihood is that we will not say anything further, at least this battle, about what the standards should be for sentencing post-booking and what role we should give. A judge may properly give guidelines, whether they're presumptive, non-presumptive, whether you have to justify departures from them, as the district court said here. We'll probably await any decision on that question until we see what happens with Zavala, when and whether it becomes final. So that should really guide you in not wasting too much time on an issue where we really don't know what the applicable law is going to be. Very good, Your Honor. Your Honor, Rick Smith for Mr. Zuniga. I'm asking the court to reverse Mr. Zuniga's conviction because the court can't be certain, based upon the evidence and the argument of counsel in this case, whether Mr. Zuniga was convicted of the indictment or convicted of subsequent bad acts. The United States attorney in this case told the jury that she had made up her own conspiracy timeline, and that was important. She said that she had made up her own conspiracy timeline with Mr. Cardenas and Mr. Zuniga. She said that we have Mr. Cardenas and Mr. Zuniga in a business relationship from the fall of 2002, October or November, through really the summer of 2003, which was frankly an impossibility. There wasn't a business relationship, and I think counsel argued in his brief that that was entirely proper with regard to her. All she was doing was characterizing this as a business relationship, but it wasn't. It was a cooperating individual who was making contacts directed by law enforcement with Mr. Zuniga after April 13th. There could be no conspiracy whatsoever. There was no business relationship after April 13th. What there was was an informant contacting Mr. Zuniga, attempting to acquire additional evidence. The United States attorney told the jury that she interpreted instruction number 20, which was the on or about instruction, and she said that, and finally, our instruction number 20, it's our on or about instruction, and it basically means that our dates are approximate. That's why we believe the conspiracy between Cardenas and Zuniga stretches beyond March through April of 2003. It stretches from the fall of 2002 to the summer of 2003, which, of course, it did not. The only thing was... What's the effect of that? Was he convicted of any acts that occurred after the Fitts conspiracy terminated? See, that's the issue. We believe that he was, because that was the majority of the evidence. And then... What was... There was a particular amount of drugs he was convicted of distributing, right? The particular amount of drugs that he was convicted of was the, well, the two pounds that contained less than... That was not the later evidence, correct? That's, I think, the point of Judge Reinhart's question. That was the... The later evidence didn't bear on the amount. There was nothing given up. There was nothing produced or provided after the two pounds. That was the sole evidence as far as distribution was concerned. But that all occurred within the proper time before the conspiracy ended. That's true. But the fact is that because they could only find that amount, that was all that they were allowed to find no matter whether they were convicted outside of the conspiracy or not. But she extended the conspiracy. But then the question is what difference it makes. I guess that's the question that I have. If the amount was identical, where is the difficulty? Because she, because the indictment charged these particular events between the end of March, March 28th and April 13th, she argued that the conspiracy is really this. And it includes the amount. But to say that the conspiracy is really this and it includes what, I don't even know... Well, let's assume the conspiracy ended before some of the acts that are introduced into evidence. But he was convicted of doing something within the conspiracy period. But they proved it in part with evidence that occurred after the conspiracy ended. Now, what is wrong with using evidence that occurred after the time of the act of which you're convicted? Well, because you have to, I suppose that if you characterize it and you go through the 404B analysis that it is being introduced for a certain purpose, such as perhaps, in this case, maybe identity. Or if it's part of a continuing chain of conduct, it's integrally related, even though the conspiracy ended. Take, for example, coming back and giving him back a quantity of the narcotics. Now, that could occur after a conspiracy ended. But it would still be evidence that the conspiracy had existed, wouldn't it? I agree with Your Honor on that point. However, the majority of the evidence, if that was all that was allowed, maybe the issue would be different. And if the Court had gone through a 404B analysis and given an instruction that this is only being introduced for the specific purpose of showing this, that this is only being introduced. Well, you don't need the 404B that's part of the same act if it's just a continuing act or it's integrally related to it. That's not a 404B problem. 404B is normally for an unrelated act. Wouldn't you argue? I mean, here's how this was argued, was that it wasn't, that all of the subsequent acts that came in, because she's, when she is arguing it at closing, she's saying, we have them in this conspiracy through the summer of 2003. And then she says, and look, what they, they're making phone calls and meeting Mr. Zuniga. And then she says, I make up my own timeline. And on June 4th, we've got another phone call between Cardenas and Zuniga. And this time, they're talking about swapping meth for cocaine. But the only thing that's wrong with that is that she said it was still part of a conspiracy when, in fact, the conspiracy had terminated. But I don't agree with Your Honor on that because I think what was wrong with that is that then you get completely away from the conspiracy, and you're talking about something completely separate from the evidence at trial. I mean, there was so minimal evidence about his connection with Montana and that he did anything wrong. And then they're bringing in these telephone calls that occur in June where they're talking about a completely separate deal where he's going to swap cocaine for methamphetamine, which, I mean, if you went through, certainly that can't be integrally related or inextricably intertwined. And it's incredibly prejudicial, and how is it probative in this case? The other issue, Your Honor, with regard to the argument that it's inextricably intertwined, the cases, I think it's U.S. v. Lilliard, and I think there's a Williams case also. I mean, they talk about, number one, it's within the temporal scope of the conspiracy. Number two, that it — I think Williams was the case where they — the drugs were stolen, or the defendants stole the drugs themselves, and then they wanted to introduce that fact. But it was all part of that same conspiracy. It was all part of what had actually been charged. In this case, if you say, well, what is it that's inextricably intertwined? Because the judge himself, when he first ruled on it, he didn't rule that it was inextricably intertwined. He — his ruling was somewhat confusing. At the pretrial conference, he says, well, this is 404B evidence, and he's only talking about the delivery of 16D1 and 16D2, which were two samples. They're characterized as samples. What they really are is — you cannot glean it from the evidence. And then at the — at the instruction conference, the — the U.S. attorney suggests that it's inextricably intertwined, but he's saying, look, I let this in because it was a possession with intent to deliver. I think that's a deliverable amount, not because it was simply possession, but there's never any clear ruling on what it is or how it comes in, and in the evidence, you don't know what it is, because there's only the one colloquy between the — between the U.S. attorney and the agent. He says, well, I brought these — I was directed that the informant had got these two — these two exhibits, and consequently — and then there was an objection, and then the objection was overruled, and then it came in that those two had been obtained somehow from the informant. But how or under what circumstances or what they were and the fact of their connection to this conspiracy back in March through April is a mystery. And it — and it — and it wasn't clear from the judge at all. And then he was saying, well, that's got to be — that's got to be double jeopardy as to the — the 5.1 grams, whatever they were. But the — but the whole thing is, is that this conspiracy was from March to April. There was nothing else that he could be convicted of except for the fact, based on the prior or the subsequent bad acts. But the fact is that the — that the U.S. attorney argued that all those subsequent bad acts were the conspiracy. That was the conspiracy. And when she closed it out, she said — she said, drug conspiracies are not an exact science. They don't begin on a certain date and end on a certain date. Well, you know, when you make that argument, when U.S. attorneys make that argument, they're making that — that argument that — that, well, it isn't. It's like the conspiracy is on or about these dates. It's approximate. But they're not arguing that it encompasses all these other acts that are outside of — completely outside of the time period. She says, looking at all the evidence in this case, you'll find him guilty of conspiracy to distribute meth, period. Not conspiracy to distribute meth during the indicted charge, but conspiracy to distribute meth. And she has just told them. She's just gone through June 4th call, the June 10th call, the — the June 11th call, bringing all that in as part of what he's convicted. And then the jury does an interesting thing, because they have the to-convict instruction, and it doesn't include and elsewhere. And consequently, the — the jury doesn't convict. They have — they say, well, you know, we're — we've got — does this mean just in Montana? Well, if, in fact, the jury were to convict on the indicted charge, they had the evidence on the indicted charge. I mean, there — there wasn't — there wasn't anything more there. But all the other evidence, all the other subsequent bad acts that were allowed in all occurred outside of the District of Montana. And it wasn't until the court changed the — the instruction that they returned the verdict. Thank you. Thank you, Judge. Thank you. May it please the Court, I'm Eric Wolf with the U.S. Attorney's Office in Montana. I'll just go to this business relationship 404B issue. The court has really hit the nail on the head that even if everything he were to say about the way it was argued, the way it was presented, even if that were all true, which it's not, it's just harmless because the jury made a drug quantity finding. It's tied to Montana. And it, in fact, to the tenth of a gram is exactly the amount of methamphetamine that Cardenas brought into Montana. So there really is no question and, you know, the jury's question about the indictment, the judge thought, well, this could be just fly-specking. Juries do these sorts of things. And once they amended it, the instructions to conform to the indictment, then they brought back a guilty verdict. But just to go to the way it was presented in closing argument by counsel at trial, I mean, what's going on after Cardenas starts cooperating? Well, they're trying to determine, you know, who is this Hector Zuniga person? How involved is he? Is he really supplying this? Is he really conspiring with Cardenas? So Cardenas begins to act as if he's still working with Zuniga. And it turns out that Zuniga wants to do business with him. So as far as Zuniga is concerned, he's still conspiring. He still thinks he's conspiring. Is he conspiring as a matter of fact? No, because Cardenas is cooperating. So when it's argued that, you know, the conspiracy continues, that's just part of the investigation. There's really no answer on the harmlessness of it all. As to the other issues, I'm satisfied to rest on a breeze. I would like the court to know that I lost my copy of Zavala and charged the new one on my credit card this morning so I'd have it handy. But I guess that was unnecessary. A memento of your day. Well, as long as I have 17 minutes and 49 seconds left, I'll just say that if asked about Zavala, I was going to say that in this case the court just gives his general sentencing philosophy. He's not saying the law requires me. Well, his general philosophy was he was bound by the guidelines. Well. The Supreme Court said that his oath of office required him to follow. Oh, on that issue, he was talking about the mandatory minimum because the mother, I believe it was, said, you know, couldn't we just do probation? Couldn't we just do an ankle bracelet or something like that? And then he said to Mr. Smith, you know, you've presented people who do not appreciate the mandatory minimum in this case and that I can't. I'm not talking about the mandatory minimum. I'm talking about what he said about having when you can depart from the guidelines. Right. But since you've made a long trip. And I billed $6.50 for my credit card. Well, we'll give you $6.50 worth of time. Okay. You know, the court's had a long day. I mean, I will say this about Zavala, is that the way Judge Siebel presents it, he says, I know the guidelines are advisory, and he does know the guidelines are advisory. I mean, we're in his court all the time. He totally appreciates this fact. He thinks the guidelines are by and large reasonable. And that, you know, what's wrong with that? And is that, does that violate Booker? Does that violate 3553A? And the fact of the matter is, you know, I read Sensing Law and Policy blog nearly every day. I think there's, like, one reported case where a guideline sentence is vacated, is unreasonable. That's it. And most courts are following the guidelines. What Judge Siebel is saying, really, is, you know, this is my philosophy. I think they're reasonable. And, you know, why can't that be part of a judge's discretion? Why can't a judge say, you know, I've read the collected works of the Sentencing Commission, and these folks are reasonable. And I, by and large, agree with them. And, you know, I think Judge Siebel believes that. But, obviously, we'll all stay tuned and follow the law as it comes down. Thank you. Thank you, Kenneth. You know, I'd say, I don't have as much confidence in Judge Siebel's sentences as does counsel. And he indicated that he did not, he said that the low purity in this case was not a basis to depart, that family circumstances was not a basis to depart, before he even started talking about the significance of the guidelines to him. With regard to, in response to Mr. Wolf's argument that it's all harmless error, I don't see, in this case, how you can talk about a conspiracy that lasts approximately two weeks, where there is a limited amount of evidence, and, frankly, the evidence that was most crushing shouldn't have been introduced at all as it came in through Jeremy Wick, the agent. And then to ask the Court to introduce or allow the introduction of this delivery of what's characterized as two samples, but the evidence never really supports that. And there's two different characterizations by the judge. Perhaps this Court may find one of them more correct than the other. But if the Court is saying that it's inextricably intertwined, it seems to me that there has to be more evidence of what that was than was ever given or shown. Because the 16D1 and 16D2 weren't connected with anything to do with that original conspiracy. In fact, that evidence was limited. There's no question that these June 4th, June 11th, June 10th large, large trading of drugs across the country had nothing to do with this conspiracy which was alleged in the indictment, and that the U.S. Attorney got to argue were this conspiracy, that is why we should convict him of this conspiracy because it's all part of that conspiracy, when it never even is analyzed properly, if it's going to come in as 404B evidence, and there's no instruction given to the jury with regard to how they should consider that, and all they had was the U.S. Attorney's argument that that was part of this conspiracy, and you should convict him of this conspiracy, which had been substantially extended by the U.S. Attorney.  Thank you, Judge. The case just argued will be submitted. The final case for argument is United States v. Hungerford.
judges: Reinhardt, Graber, Lew